## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VICTORIA SCHRADER, | : | Civil No. 1:21-CV-01559 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| DAVID W. SUNDAY, JR., in his | : | |
| official capacity, and JOSH SHAPIRO, | : | |
| in his official capacity, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## <u>MEMORANDUM</u>

This is an action seeking injunctive relief filed by Plaintiff Victoria Schrader

("Schrader") against David W. Sunday, Jr., the District Attorney of York County

("Sunday") and Josh Shapiro, the Attorney General of Pennsylvania ("Shapiro").

Before the court is a motion for a preliminary injunction filed by Schrader.  (Doc.

9.)  For the reasons that follow, the motion will be granted.  (*Id.*)

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

According to the complaint, on December 20, 2018, the Commonwealth of

Pennsylvania charged Tyree M. Bowie ("Bowie") with the murder of Dante

Mullinix ("Dante"), a two-year old child.[1]  (Doc. 1, ¶¶ 7, 9.)  Schrader is Dante's

grandmother, who believes that the York County Office of Children and Youth

Services ("CYS") "failed to protect Dante and prevent his death."  (*Id.* ¶¶ 20–21.)

---

[1] The criminal case against Bowie remains pending in the York County Court of Common Pleas
at docket number 7558-2018.  (Doc. 1, ¶ 8.)

Similarly, Sarah Mercado ("Mercado"), Dante's aunt and Schrader's daughter, believes that York County CYS failed Dante and that Bowie is innocent of Dante's murder.[2]  (*Id.* ¶¶ 15, 20.)  To advocate for these beliefs, Mercado maintains a Facebook group entitled "Justice for Dante" on which she posts her belief that Bowie is innocent, and that York County CYS was the party responsible for failing Dante, rather than Bowie.  (*Id.* ¶ 16.)

During the course of discovery in his criminal case, Bowie received various documents concerning investigations into Dante's death, including documents from CYS.  (*Id.* ¶¶ 10, 12.)  Before Dante's death, Mercado made a report to CYS expressing concern for Dante's wellbeing.  (*Id.* ¶ 11.)  Mercado's report, and the documents associated with the investigation stemming therefrom, were part of the documents available to Bowie in his ongoing criminal case.  (*Id.* ¶ 12.)  After Bowie received these documents, he sent them to Mercado, who posted them to the Justice for Dante Facebook page as additional evidence of CYS's alleged failings surrounding Dante's death.  (*Id.* ¶¶ 14, 16.)

Following publication of these documents to Mercado's Facebook page, "Sunday charged Mercado with a second-degree misdemeanor under

---

[2] Mercado has two cases pending with the court seeking relief similar to that requested in the instant case: 1:21-cv-1631 and 1:21-cv-1743.

Pennsylvania's Child Protective Services Law."[3]  (*Id.* ¶ 17.)  As a result, Schrader alleges that while she desires to republish and distribute the CYS documents already published by Mercado on Facebook,[4] she fears the institution of criminal proceedings if she does so in light of Sunday's prosecution of Mercado.[5]  (*Id.* ¶¶ 22–23.)

## A. Pennsylvania's Child Protective Services Law ("CPSL")

Schrader has stated that she fears the institution of criminal proceedings under Pennsylvania's CPSL.  The CPSL was enacted following legislative findings that "[a]bused children are in urgent need of an effective child protective service to prevent them from suffering further injury and impairment."  23 PA. CONS. STAT. § 6302(a).  Thus, the statute's goals were to:

---

[3] Schrader notes that "the charge against Mercado was dismissed without prejudice on September 15, 2021" for "reasons not appearing on the public record[.]"  (Doc. 10, p. 8 n.2.)

[4] The scope of Schrader's desired publication is unclear since her motion for a preliminary injunction seeks to enjoin Defendants from prosecuting her for publishing, republishing, distributing, or otherwise sharing any documents originating with York County CYS or Pennsylvania Department of Human Services "whether now in her possession or otherwise coming into her possession . . . concerning Dante Mullinix," while her complaint and briefing on the motion limits her desired speech to documents already published by Mercado to Facebook. (Doc. 1; Doc. 9; Doc. 10; Doc. 25; Doc. 26.)

[5] The court notes that a protective order has also been entered in the criminal case against Bowie on October 12, 2021, which precludes the "dissemination or distribution of discovery material and/or Confidential Child Protective Services records related to Dante Mullinix and the prosecution of that case."  (Doc. 19, p. 3; *see also* Doc. 19-1.)  This order "specifically notes that the prohibition applies to any individuals in possession of such materials or records and requires that anything previously distributed online must be removed[.]"  (*Id.*)  The order was directed to be provided to Plaintiff's counsel.  (*Id.*)

encourage more complete reporting of suspected child abuse; . . . to involve law enforcement agencies in responding to child abuse; and to establish in each county protective services for the purpose of investigating the reports swiftly and competently, providing protection for children from further abuse and providing rehabilitative services for children and parents involved . . . .

23 PA. CONS. STAT. § 6302(b).

To store reporting information, the CPSL provides for the establishment of "a Statewide database of protective services," which includes eleven categories of information related to reports of child abuse. *See* 23 PA. CONS. STAT. § 6331. Within the categories of reports, the Statewide database includes the following information:

(1)  The names, Social Security numbers, age, race, ethnicity and sex of the subjects of the reports.

(2)  The date or dates and the nature and extent of the alleged instances that created the need for protective services.

(3)  The home addresses of the subjects of the report.

(4)  The county in which the alleged incidents that created the need for protective services occurred.

(5)  Family composition.

(6)  The name and relationship to the child in question and of other persons named in the report.

(7)  Factors contributing to the need for protective services.

(8)  The source of the report.

(9)  Services planned or provided.

(10)   If the report alleges child abuse, whether the report was determined to be founded, indicated or unfounded.

(11)  If the report alleged the child was in need of general protective services, whether the report was valid or invalid.

(12)   If the report was accepted for services and the reasons for the acceptance.

(13)  If the report was not accepted for services, the reason the report was not accepted and whether the family was referred to other community services.

(14)   Information obtained by the department in relation to a perpetrator's or school employee's request to release, amend or expunge information retained by the department or the county agency.

(15)  The progress of any legal proceedings brought on the basis of the report of suspected child abuse.

(16)   Whether a criminal investigation has been undertaken and the result of the investigation and of any criminal prosecution.

(17)   In the case of an unfounded or invalid report, if it is later determined that the initial report was a false report, a notation to that effect regarding the status of the report.

(18)   Unfounded reports of child abuse, limited to the information authorized under section 6337 (relating to disposition and expunction of unfounded reports and general protective services reports).

(19)  Any additional information provided in section 6313(c) (relating to reporting procedure).

(20)   Any additional demographic information that the department requires to comply with section 6342 (relating to studies of data in records).

(21)  A family case record for each family accepted for investigation, assessment or services which shall be maintained consistent with regulatory requirements.

(22)   With respect to cases that are not accepted for child abuse investigation or general protective services assessment or are referred to community services:

(i)  The reason the report was not accepted.

(ii)  Any information provided to the referral source or the family related to other services or option available to address the report.

(23)  Any other information that is necessary to maintain the names of persons convicted of a violation under 18 Pa.C.S. § 4906.1 (relating to false reports of child abuse) or the names of persons who made a false report of the need for general protective services.

23 PA. CONS. STAT. § 6336.  The statute notes that "[n]o information other than that permitted in this subsection shall be retained in the Statewide database."  *Id.*

The CPSL further provides for the confidentiality of any information in the Statewide database, and that only certain enumerated individuals and entities are entitled to access this information.  23 PA. CONS. STAT. §§ 6339–40.  The statute creates criminal penalties for non-compliance with confidentiality requirements. Specifically, section 6349 states:

A person who willfully releases or permits the release of any information contained in the Statewide database or the county agency records required by this chapter to persons or agencies not permitted by this chapter to receive that information commits a misdemeanor of the second degree.   Law enforcement officials shall insure the confidentiality and security of information under this chapter.   A person, including a law enforcement official, who violates the provisions of this subsection shall, in addition to other civil or criminal

penalties provided by law, be denied access to the information provided under this chapter.

23 PA. CONS. STAT. § 6349(b).

### B. The Child Abuse Prevention and Treatment Act ("CAPTA") and the CPSL

The confidentiality provisions of the CPSL are due, in part, to the requirements of the Child Abuse Prevention and Treatment Act, 42 U.S.C. § 5101, *et seq.*, ("CAPTA") which provides federal funding for child abuse prevention, assessment, investigation, and treatment activities. 42 U.S.C. § 5116(a)–(b). Funding is contingent upon state certification that:

> [T]he State has in effect and is enforcing a State law, or has in effect and is operating a statewide program, relating to child abuse and neglect that includes . . . methods to preserve the confidentiality of all records in order to protect the rights of the child and the child's parents or guardian, including requirements ensuring that reports and records made and maintained pursuant to the purposes of this Act shall only be made available to [enumerated persons, entities, and agencies].

42 U.S.C. § 5106a(b)(2)(B)(viii). The CPSL reflects Pennsylvania's effort to comply with CAPTA to receive federal funding in support of child abuse deterrence efforts.

On the basis of these facts, Schrader filed the instant complaint on September 10, 2021, alleging that section 6349(b) of the CPSL unconstitutionally infringes on her First Amendment right to free speech and should not be enforced.

(Doc. 1, pp. 8–9.)[6]  Soon thereafter, on September 27, 2021, Schrader filed the instant motion for a preliminary injunction and an accompanying brief.  (Docs. 9, 10.)  Sunday and Shapiro filed briefs in opposition to this motion on October 12, 2021.  (Docs. 19, 20.)  Schrader timely filed reply briefs.  (Docs. 25, 26.)  Thus, the motion for a preliminary injunction is ripe for review.[7]

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 65 allows a district court to enter a preliminary injunction.  To obtain a preliminary injunction, plaintiffs must establish (1) that they are likely to prevail on the merits of the case; (2) that they would suffer irreparable harm if preliminary injunctive relief were denied; (3) that the harm defendants would suffer from the issuance of an injunction would not outweigh the harm plaintiffs would suffer if an injunction were denied; and (4) that the public interest weighs in favor of granting the injunction.  *Holland v. Rosen*, 895 F.3d 272, 285–86 (3d Cir. 2018) (citing *Del. Strong Families v. Att'y Gen. of Del.*, 793 F.3d 304, 308 (3d Cir. 2015)).  The first two factors are "gateway factors": if the plaintiffs have not established those factors, the court need not consider the last two factors.  *Greater Phila. Chamber of Commerce v. City of*

---

[6] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

[7] The court notes that there are also two pending motions to dismiss filed by Sunday and Shapiro. (Docs. 14, 29.)  However, the court will resolve these motions in a separate disposition.

*Phila.*, 949 F.3d 116, 133 (3d Cir. 2020) (quoting *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017)).  If the plaintiff does establish the first two factors, "[t]he court then determines 'in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief.'"  *Id.* (quoting *Reilly*, 858 F.3d at 179).

While the plaintiff normally has the burden of demonstrating a sufficient likelihood of prevailing on the merits, "in First Amendment cases where 'the [g]overnment bears the burden of proof on the ultimate question of [a statute's] constitutionality, [plaintiffs] must be deemed likely to prevail [for the purpose of considering a preliminary injunction] unless the [g]overnment has shown that [plaintiffs'] proposed less restrictive alternatives are less effective than [the statute].'"  *Reilly*, 858 F.3d at 180 (quoting *Ashcroft v. ACLU*, 542 U.S. 656, 666 (2004)).  In other words, "the plaintiff 'must be deemed likely to prevail' if the government fails to show the constitutionality of the law."  *Greater Phila. Chamber of Commerce*, 949 F.3d at 133 (quoting *Reilly*, 858 F.3d at 180).  Indeed, "the burdens at the preliminary injunction stage track the burdens at trial," and for First Amendment purposes, this burden rests with the government.  *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal, et al.*, 546 U.S. 418, 429 (2006).

Ultimately, the decision of whether to issue a preliminary injunction is left to the sound discretion of the district court.  *Pennsylvania v. President of United*

*States*, 930 F.3d 543, 565 (2019) (citing *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)).  A preliminary injunction is "an extraordinary remedy never awarded as of right" which should only be awarded in "limited circumstances."  *Holland*, 895 F.3d at 285; *Benisek v. Lamone*, 585 U.S. __, 138 S. Ct. 1942, 1943 (2018) (quoting *Winter*, 555 U.S. at 24).

DISCUSSION

**A. Schrader has Standing to Seek a Preliminary Injunction.**

Initially, the court notes that Defendants purport to challenge Schrader's claim of irreparable injury under the preliminary injunction framework, arguing that Schrader cannot establish an injury because she does not wish to release protected information and has therefore not suffered a violation of her First Amendment rights.  (Doc. 19, p. 24.)  However, the court construes Defendants' arguments as more appropriately challenging Schrader's standing—specifically her ability to prove injury in fact.  Indeed, if Schrader has not alleged a First Amendment violation, it is unclear how she would have standing to proceed with this lawsuit.  Recognizing the jurisdictional barrier that a lack of standing would pose to the court's resolution of the issues presented in this case, *see Raines v. Byrd*, 521 U.S. 811, 818 (1997), and the court noting its ongoing obligation to

independently assure itself that the plaintiff has standing to pursue the requested relief, the court first turns to the question of Schrader's standing.

Under Article III of the United States Constitution, federal courts are constrained to resolve only "Cases" and "Controversies." U.S. CONST. art. III, § 2, cl. 1. "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Raines*, 521 U.S. at 818 (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 37 (1976)). Ensuring a plaintiff has Article III standing "'serves to prevent the judicial process from being used to usurp the powers of the political branches,' and confines the federal courts to a properly judicial role." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citations omitted).

Article III standing requires that the plaintiff, who bears the burden of establishing these elements, prove: (1) an injury-in-fact; (2) that is fairly traceable to the defendant's conduct; and (3) that is likely to be redressed by a favorable decision. *Id.* (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). When standing is challenged at the pleading stage, "the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). An injury-in-fact must be "'an invasion of a legally protected interest' that is 'concrete and particularized,' and 'actual or imminent, not

conjectural or hypothetical.'" *Id.* (quoting *Lujan*, 504 U.S. at 560).  A

particularized injury must "affect the plaintiff in a personal and individual way."

*Lujan*, 504 U.S. at 560 n.1.

The Supreme Court has held that "conflict between state officials

empowered to enforce a law and private parties subject to prosecution under that

law is a classic 'case' or 'controversy' within the meaning of Art. III." *Diamond v.*

*Charles*, 476 U.S. 54, 64 (1986).  The Court has therefore held that "[w]hen

contesting the constitutionality of a criminal statute, 'it is not necessary that [the

plaintiff] first expose [herself] to actual arrest or prosecution to be entitled to

challenge [the] statute that [she] claims deters the exercise of [her] constitutional

rights.'" *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979)

(quoting *Steffel v. Thompson*, 415 U.S. 452, 459 (1974)).  Instead, "[w]hen the

plaintiff has alleged an intention to engage in a course of conduct arguably affected

with a constitutional interest, but proscribed by a statute, and there exists a credible

threat of prosecution thereunder, [she] 'should not be required to await and

undergo a criminal prosecution as the sole means of seeking relief.'" *Babbitt*, 442

U.S. at 298 (quoting *Doe v. Bolton*, 410 U.S. 179, 188 (1973)).  However,

"'persons having no fears of state prosecution except those that are imaginary or

speculative,'" do not satisfy Article III standing requirements. *Id.* (quoting

*Younger v. Harris*, 401 U.S. 37, 42 (1971)).

In this case, Schrader has alleged an intention to engage in the distribution and publication of information arguably affected with a constitutional interest, but proscribed by section 6349(b) of the CPSL. Specifically, she desires to publish, republish, distribute, or otherwise share documents originating with York County CYS or Pennsylvania Department of Human Services "whether now in her possession or otherwise coming into her possession . . . concerning Dante Mullinix," and/or documents already published by Mercado to Facebook. (Doc. 9; Doc. 1.)

It is clear to the court that to the extent that Schrader's intended action is to publish information not previously published by Mercado, she has established an injury in fact for purposes of the standing analysis. Defendants have acknowledged that this action would violate the confidentiality enforcement provisions of the CPSL and could thereby subject Schrader to prosecution. Since Schrader has alleged a credible threat of prosecution based on her desire to engage in this course of conduct, she does not need to await prosecution to initiate her constitutional challenge and has set forth a sufficient injury in fact to proceed.

What is less clear, however, based on Defendants' arguments, is whether Schrader's desire to publish documents already posted to Facebook by Mercado constitutes a "release" of information prohibited by section 6349(b) of the CPSL. Defendants appear to argue that the term "release" in the context of the CPSL

should mean information not previously released to the public since information cannot be "released" for the first time twice.  (*See* Doc. 19, p. 22.)  However, the court finds that Defendants' construction is inconsistent with the plain language of the CPSL and the facts of this case.

The CPSL's penalty provision states that **<u>anyone</u>** "who willfully releases or permits the release of any information contained in the Statewide database or the county agency records . . . **<u>to persons or agencies not permitted</u>** . . . **<u>to receive that information</u>** commits a misdemeanor of the second degree."  23 Pa. Cons. Stat. § 6349(b) (emphasis added).  The statute does not include an exception for information previously released to the public, or even an exception for information that was only previously released to one person.  Instead, this provision criminalizes the release of information to individuals not authorized to receive it, regardless of whether the information was previously released.

In this case, it is undisputed that Schrader is an individual not authorized to receive or release the information at issue under the CPSL.  It is further uncontested that Schrader desires and intends to distribute the information at issue to others who are not privileged to receive this information under the CPSL.  The fact that Bowie and Mercado have already released the subject information to others is of no moment with respect to the potential for Schrader being prosecuted pursuant to section 6349(b) of the CPSL.

Defendants' implication that Schrader would not be prosecuted for distributing information that has already been released to the public by Mercado is contradicted by their failure to provide Schrader any assurances that they would refrain from prosecuting her for such action.  Instead, they have vehemently opposed the court's entry of an order enjoining them from prosecuting her. Moreover, Defendants' failure to prosecute Bowie as the original releasor of the information at issue to Mercado, and their choice to instead prosecute Mercado after she posted the information to Facebook appears to be inconsistent with their interpretation of the term "release."

Accordingly, the court finds that Schrader still faces a credible threat of prosecution under the CPSL in the event that she engages in the release of information already released by Mercado on Facebook.  Therefore, Schrader does not need to await prosecution to initiate her constitutional challenge and has set forth a sufficient injury in fact to proceed.

The court finds that Schrader has also satisfied the elements of traceability and redressability for standing purposes.  Indeed, if Schrader were to be prosecuted for her speech, it would be due to enforcement by Defendants of section 6349(b) of the CPSL.  Were the court to find this provision unconstitutional, Schrader would

have no further fear of prosecution.  Therefore, the court is assured that Schrader

has standing to pursue her preliminary injunction.[8]

**B. Schrader is Likely to Succeed on the Merits of her As-Applied Challenge.**

In this case, Schrader challenges section 6349(b) of the CPSL both as

applied to her and on its face.  The court focuses its analysis on the as-applied

challenge first.

### 1.  The Statute Presents a Content-Based Restriction on Speech.

"Whenever a plaintiff challenges a speech restriction on First Amendment

grounds, the court must determine at the outset whether the restriction is 'content-

based' or 'content-neutral.'"  *Peck v. McCann*, 525 F. Supp. 3d 1316, 1340 (D.

Colo. 2021).  As explained by the Supreme Court, "[d]eciding whether a particular

regulation is content based or content neutral is not always a simple task."

*Bartnicki v. Vopper*, 532 U.S. 514, 526 (2001) (quoting *Turner Broadcasting*

*System, Inc. v. FCC*, 512 U.S. 622, 642–43 (1994)).  However, the Court has held

that, as a general matter, "laws that by their terms distinguish favored speech from

disfavored speech on the basis of the ideas or views expressed are content based."

---

[8] The court notes the existence of the protective order entered in Bowie's ongoing criminal case, which Defendants assert moots Schrader's motion for a preliminary injunction.  The court does not find that the existence of this order moots Schrader's request for a preliminary injunction with respect to the issues presented for the court's consideration in this case.  Indeed, the constitutionality of the protective order has not been placed before the court in this case.  Thus, the court makes no ruling regarding the impact, if any, of this protective order on Schrader's ability to exercise her First Amendment rights.

*Id.* Indeed, communications that are singled out by virtue of the subject matter, rather than the source of the communication are content-based restrictions on speech. *Id.* In other words, if a statute restricts speech based on a particular subject matter, it is content-based. *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015).

The Court has held that this is the case even if the statute "does not discriminate among viewpoints within that subject matter. For example, a law banning the use of sound trucks for political speech—and only political speech— would be a content-based regulation, even if it imposed no limits on the political viewpoints that could be expressed." *Id.* at 169 (citations omitted).

"Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Id.* (citing *R.A.V. v. St. Paul*, 505 U. S. 377, 395 (1992); *Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*, 502 U. S. 105, 115, 118 (1991)). Thus, when a statute is content-based, it must survive strict scrutiny. *Reed*, 576 U.S. at 164. The Court has noted that a facially content-based speech restriction "is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification or lack of 'animus toward the ideas contained' in the regulated speech." *Id.* at 165.

In this case, the statute at issue facially distinguishes favored speech from unfavored speech based on whether the speech falls within the enumerated list of documents contained within the statewide database. Therefore, the statute restricts speech based on a particular subject matter: information contained within the statewide database. The fact that the statute bans speech regarding all information within the statewide database, regardless of its message, does not alter this conclusion. The court will therefore apply the strict scrutiny framework to the CPSL.

### 2.  The Statute is Not Likely to Survive Strict Scrutiny.

In order to survive strict scrutiny, the government must prove that the challenged statutory provision is "necessary to serve a compelling state interest and is narrowly drawn to achieve that end." *Ark. Writers' Project, Inc. v. Ragland*, 481 U.S. 221, 231 (1987). The statute must be the "least restrictive means" for the government to achieve its compelling interest. *Ashcroft*, 542 U.S. at 666.

The court finds that the government does have a compelling state interest supporting the CPSL's confidentiality provision. Indeed, the goals of encouraging a more complete reporting of suspected child abuse by protecting the privacy of reporters, the child victims, and the accused perpetrators in order to identify and remedy abuse are compelling. The fact that Congress passed CAPTA with a requirement for the inclusion of some method of preserving confidentiality as a

condition for receiving federal funding "is strong evidence of the state's interest here." *Peck*, 525 F. Supp. 3d at 1341.  The Supreme Court has also recognized Pennsylvania's interest in the confidentiality of these records as compelling.  *See Pennsylvania v. Ritchie*, 480 U.S. 39, 60 (1987) (referring to "the Commonwealth's compelling interest in protecting its child-abuse information"). Even Schrader recognizes that these interests are "arguably compelling," although she disputes that these interests are implicated under the specific circumstances of this case.  (Doc. 10, p. 25.)  Therefore, the court finds that Defendants have alleged a compelling interest in this case.

Having established that the government has a compelling interest in preserving the confidentiality of child abuse information in the statewide database, the court turns to the question of whether the CPSL is narrowly tailored to serve this interest.  Initially, the court notes that because the statute in this case has been found to be a content-based restriction on speech, the statute is considered "presumptively invalid"—a burden which the government will need to overcome. *See United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 817 (2000).  When assessing whether a statute is narrowly tailored, "the court should ask whether the challenged regulation is the least restrictive means among available, effective alternatives." *Ashcroft*, 542 U.S. at 666.  "When a plausible, less restrictive alternative is offered to a content-based speech restriction, it is the Government's

obligation to prove that the alternative will be ineffective to achieve its goals." *Playboy Entm't Grp.*, 529 U.S. at 816.  The court notes, however, that "[t]he First Amendment requires that [a statute] be narrowly tailored, not that it be 'perfectly tailored.'"  *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 454 (2015) (quoting *Burson v. Freeman*, 504 U.S. 191, 209 (1992)).

In this case, the court finds that the statute is not narrowly tailored to meet the government's goals.  The statute criminalizes disclosure of *any* information contained within reports or records of child abuse, regardless of whether the information has already been previously released to the public.  Schrader has proposed plausible, less-restrictive alternatives which she asserts would suffice to protect the state's interest in the confidentiality of child abuse records.  Specifically, Schrader claims that the Commonwealth could have: (1) implemented "more rigorous internal procedures regarding dissemination," which could include "'a damages remedy against the government or its officials'"; (2) "sought a protective order to prevent Tyree Bowie[ from] sharing . . . the CYF Documents with anyone other than his defense attorney" prior to releasing the documents to the defense; or (3) implemented "stricter guidelines for the release of confidential information in the context of a criminal prosecution."  (Doc. 10, pp. 29–30.)

In response to Schrader's proposed less restrictive alternatives, Sunday observes that "it seems unlikely that civil penalties would be sufficient" for the

deterrent effect desired to prevent the release of this confidential information, and that "[t]he imposition of job-related consequences for government employees is also insufficient, given that non-government employees are also capable of releasing information they obtain." (Doc. 19, p. 16.)  For his part, Shapiro merely states that Schrader's proposed alternatives are "disingenuous" and that her proposals request a "stamp of approval from this Court to forgive the prior unlawful conduct of others." (Doc. 20, pp. 19–20.)  Shapiro also generically asserts that "the alternatives offered by Plaintiff would be ineffective to achieve the goals of preventing the release of confidential materials.  Even if the government did more to explain that the materials should not be shared by Bowie, nothing seems to suggest, based on the record presented[,] that Bowie would have done anything different than share them with Mercado." (*Id.* at 21.)

The court finds that neither Defendant's response meaningfully engages with the less restrictive alternatives proposed by Schrader.  Indeed, Shapiro is entirely dismissive of the notion that an alternative less restrictive than criminal sanctions could exist.  Instead, Defendants offer alternatives for Schrader's speech, noting that she could air her concerns to the citizen review panels that exist to hear such complaints, and that she is free to criticize York County CYS without releasing confidential child abuse records.  However, less restrictive alternatives for the proposed speech are not what the court is tasked with considering.  *See Reno v.*

*ACLU*, 521 U.S. 844, 879 (1997) (rejecting an argument that the statute provided a "reasonable opportunity" to engage in restricted speech as inapplicable to the strict scrutiny analysis); *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (noting that the government must "leave open ample alternative channels for communication" in time, place, or manner regulations).  "The fact that plaintiff may air grievances to government actors does not explain why her public speech on nonidentifying child abuse report information need be so restricted."  *Peck*, 525 F. Supp. 3d at 1344.

Defendants' failure to effectively refute Schrader's proposed less-restrictive alternatives to the criminal sanctions imposed by the CPSL results in a failure to show that the CPSL is sufficiently narrowly tailored.  Defendants may be able to meet this burden at a later stage in this case, but for purposes of evaluating whether a preliminary injunction is appropriate, Defendants' failure to meaningfully respond to Schrader's arguments equates to a likelihood of success on the merits of Schrader's First Amendment claims under the relevant First Amendment standards.[9]

---

[9] Because Schrader has shown a likelihood of success on the merits of her as-applied constitutional challenge, it is not necessary for the court to evaluate Schrader's facial challenge to the CPSL for the purpose of resolving the instant motion.

### C. Schrader Would Suffer Irreparable Harm.

To demonstrate irreparable harm, Schrader "must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989). The Supreme Court has held that "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

Here, Schrader would suffer irreparable injury because she is effectively forced to choose between forfeiting her right to free speech or facing potential criminal charges. Indeed, her daughter was criminally charged for engaging in the same speech that Schrader desires to engage in. Accordingly, because Schrader's First Amendment rights would be burdened in the absence of injunctive relief, the court finds that she has established irreparable injury.[10]

---

[10] Defendants argue that because Schrader would not be prosecuted for distributing information previously released by Mercado, she lacks an irreparable injury in this case. Based on the court's prior discussion establishing Schrader's standing to seek injunctive relief, the court is not persuaded that Defendants' interpretation of the term "release" within the CPSL precludes them from initiating criminal proceedings against Schrader. Indeed, Defendants have not indicated an intention to refrain from prosecuting Schrader if she engages in her intended course of speech. To the contrary, they have argued that it would be inappropriate for the court to enter an order enjoining them from prosecuting Schrader. Therefore, the court is not persuaded by Defendants' argument.

### D. The Balancing of Harms and Public Interest Weighs in Favor of Granting a Preliminary Injunction.

Having concluded that Schrader has established the first two elements of the preliminary injunction analysis, the court must now weigh the remaining factors— whether Schrader's irreparable harm is outweighed by the harm Defendants would suffer by the imposition of a preliminary injunction and whether the public interest weighs in favor of granting the injunction. *Holland*, 895 F.3d at 285–86.

Defendants primarily assert that the public has an interest in preventing a chilling effect on reporting instances of child abuse. Specifically, Defendants argue that if reporters, victims, or families of child abuse knew that their information and the substance of their reports could become public, these individuals may be deterred from reporting child abuse, and the abuse could be perpetuated longer than it otherwise would be if individuals were not deterred from reporting. Defendants assert that the confidentiality provisions in the CPSL are crucial for protecting the privacy of all individuals involved in child abuse allegations to ensure that the state can effectively investigate and curtail abuse.

The court finds that this public interest is compelling, as noted above. As cited in Sunday's brief, the Supreme Court has held that:

> To allow full disclosure to defense counsel in [child abuse cases] would sacrifice unnecessarily the Commonwealth's compelling interest in protecting its child abuse information. If the CYS records were made available to defendants, even through counsel, it could have a seriously adverse effect on Pennsylvania's efforts to uncover and treat abuse.

> Child abuse is one of the most difficult crimes to detect and prosecute, in large part because there often are no witnesses except the victim. A child's feelings of vulnerability and guilt and his or her unwillingness to come forward are particularly acute when the abuser is a parent. It therefore is essential that the child have a state-designated person to whom he may turn, and to do so with the assurance of confidentiality. Relatives and neighbors who suspect abuse also will be more willing to come forward if they know that their identities will be protected. Recognizing this, the Commonwealth -- like all other States -- has made a commendable effort to assure victims and witnesses that they may speak to the CYS counselors without fear of general disclosure. The Commonwealth's purpose would be frustrated if this confidential material had to be disclosed upon demand to a defendant charged with criminal child abuse[.]

*Ritchie*, 480 U.S. at 60. Despite the Supreme Court's clear acknowledgement that the Commonwealth may and should avoid granting criminal defendants unfettered access to child abuse information through the production of discovery, Defendants in this case made no discernable effort to engage in such precautions in Bowie's case. Instead, while purporting to espouse the importance of the confidentiality of these records, Defendants have succeeded in frustrating the very purpose they purport to promote by disclosing Dante's records to Bowie without any limitations on Bowie's access. But for the government's failings here, Schrader would not have had access to the information she now wishes to publish.

The court does not minimize the significant public interest in protecting the confidentiality of child abuse information. The court also recognizes the significance of Schrader's First Amendment interest. *See Bartnicki*, 532 U.S. at 533–34 (finding that under the First Amendment, "privacy concerns give way

when balanced against the interest in publishing matters of public importance");

*New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964) (noting the "profound

national commitment to the principle that debate on public issues should be

uninhibited, robust and wide-open").  There is an obvious tension between these

significant and important interests.  However, in this case, on the facts before the

court, the court cannot find that the public interest in confidentiality outweighs

Schrader's First Amendment right to speak on a matter that, while ordinarily

confidential, the state failed to safeguard.

Defendants next argue that there is a general public interest in protecting an

accused's right to a fair trial.  By way of example, Defendants cite to Bowie's

ongoing criminal case and the publicity that his case has received.  Without

discounting the weighty public interest in affording criminally accused individuals

a fair and impartial trial, the court finds that it is unclear how Schrader's proposed

speech in this case would undermine Bowie's right to a fair and impartial jury trial.

Indeed, Defendants fail to distinguish Schrader's desired speech in this case from

the constitutionally protected media coverage that Bowie's case has already

received.

The court notes that Schrader's harm in this case is significant.  Indeed,

courts have routinely recognized that the violation of an individual's First

Amendment rights is a weighty concern.  *See K.A. v. Pocono Mt. Sch. Dist.*, 710

F.3d 99, 113–14 (3d Cir. 2013); *Earnest v. Mifflin Cnty. Sch. Dist.*, No. 1:20-cv-1930, 2020 U.S. Dist. LEXIS 262783, at *15–16 (M.D. Pa. Oct. 23, 2020); *Bair v. Shippensburg Univ.*, 280 F. Supp. 2d 357, 373 (M.D. Pa. 2003).  Having set forth these interests above, the court need not belabor this point here.

Finally, the court observes the Third Circuit's caution that "the enforcement of an unconstitutional law vindicates no public interest." *Pocono Mt. Sch. Dist.*, 710 F.3d at 114 (citing *ACLU v. Ashcroft*, 322 F.3d 240, 251 n.11 (3d Cir. 2003) ("[N]either the Government nor the public generally can claim an interest in the enforcement of an unconstitutional law." (cleaned up))).  As the court has already established, Schrader has a likelihood of success on the merits of her as-applied First Amendment challenge to section 6349(b) of the CPSL.  Since enforcing an unconstitutional law would not vindicate any public interest here, it is clear that in this case, Schrader's injury to her First Amendment rights outweighs any potential harm to Defendants and the public's interest in the confidentiality of child abuse records.

Accordingly, because Schrader has shown that she is likely to succeed on the merits of her claims, that she would suffer irreparable harm in the absence of an injunction, that her irreparable harm is not outweighed by the potential harm to Defendants, and that the public interest weighs in favor of granting a preliminary injunction, the court will grant Schrader's motion for preliminary injunctive relief.

## E. Bond Requirement

Federal Rule of Civil Procedure 65(c) provides that a court may only issue a preliminary injunction "upon the giving of security by the applicant, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained."  FED. R. CIV. P. 65(c).

Neither party has addressed the bond requirement in this case.  "The absence of such evidence naturally renders it somewhat difficult to fulfill the court's responsibility to 'require the successful applicant to post adequate security.'" *Stilp v. Contino*, 629 F. Supp. 2d 449, 467 (M.D. Pa. 2009) (quoting *Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 103 (3d Cir. 1988)). Although the amount of the bond is left to the court's discretion, *Frank's GMC Truck Ctr.*, 847 F.2d at 103, courts have held that the bond requirement is otherwise mandatory with limited exception.  *Elliott v. Kiesewetter*, 98 F.3d 47, 59 (3d Cir. 1996) (affording courts the discretion to waive the bond requirement where "a balance of the equities of the potential hardships that each party would suffer as a result of a preliminary injunction" weigh "overwhelmingly in favor of the party seeking the injunction"); *Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 210 (3d Cir. 1990) (noting that "while there are exceptions, the instances in

which a bond may not be required are so rare that the requirement is almost mandatory").

In circumstances such as this where the parties have failed to address the bond requirement, courts in this Circuit have required the moving party to post a nominal bond. *See, e.g.*, *Pomicter v. Luzerne Cnty. Convention Ctr. Auth.*, No. 3:16-cv-632, 2016 U.S. Dist. LEXIS 56418, at *25 (M.D. Pa. Apr. 27, 2016) (requiring plaintiff "to post a nominal bond of $100"); *Am. Freedom Defense Initiative v. SEPTA*, 92 F. Supp. 3d 314, 331 (E.D. Pa. 2015) (requiring plaintiffs to post $100 in nominal bond before the preliminary injunction would issue); *Stilp*, 629 F. Supp. 2d at 468 (requiring moving party to post a nominal bond of $250). Accordingly, in consideration of the fact that Schrader seeks a preliminary injunction to protect an important constitutional right, and Defendants' failure to indicate that the entry of an injunction would occasion loss, the court finds that a nominal bond of $100 will be adequate to protect the parties' respective interests without imposing an undue hardship upon Schrader for seeking vindication of her First Amendment rights.

## CONCLUSION

For the foregoing reasons, the motion for a preliminary injunction filed by

Plaintiff, Doc. 9, will be granted.  An appropriate order will issue.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: May 16, 2022